UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (LAS VEGAS)

|  |  |  |
|---|---|---|
| IN RE: | . | Case No. 14-11894-abl |
|  | . | Chapter 11 |
| TJ PLAZA, LLC, | . | (Jointly Administered) |
|  | . |  |
| Debtor. | . |  |
|  | . |  |
| . . . . . . . . . . . . . . . | . |  |
|  | . | Case No. 14-11895-abl |
| IN RE: | . | Chapter 11 |
|  | . |  |
| DSWC, INC., | . |  |
|  | . | 300 Las Vegas Blvd. South |
| Debtor. | . | Las Vegas, NV  89101 |
|  | . | Thursday, October 2, 2014 |
| . . . . . . . . . . . . . . . | . | 10:41 a.m. |

TRANSCRIPT OF ORAL RULING RE: OBJECTION TO CLAIMS OF
TJP CREDIT, LLC, AND DESERT LAKES APARTMENTS LP
PURSUANT TO 11 U.S.C. SECTION 502(A)
FILED BY ROBERT R. KINAS ON BEHALF OF U.S. BANK NATIONAL
ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF
WACHOVIA BANK COMMERCIAL MORTGAGE TRUST [137]
ORAL RULING RE: APPLICATION MOTION TO DISALLOW
TJP CREDIT, LLC AND DESERT LAKES APARTMENTS, LP
TO VOTE ON PLAN OF REORGANIZATION
FILED BY ROBERT R. KINAS ON BEHALF OF U.S. BANK NATIONAL
ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF
WACHOVIA BANK COMMERCIAL MORTGAGE TRUST [165]
**BEFORE THE HONORABLE AUGUST B. LANDIS**
**UNITED STATES BANKRUPTCY COURT JUDGE**

APPEARANCES CONTINUED

Audio Operator:          Helen Smith, ECR

Transcription Company:   Access Transcripts, LLC
                         10110 Youngwood Lane
                         Fishers, IN 46038
                         (855) 873-2223
                         www.accesstranscripts.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES CONTINUED:

```
For the Debtor:              Larson & Zirzow
                             By:  MATTHEW C. ZIRZOW, ESQ.
                             810 S. Casino Center Blvd., #101
                             Las Vegas, NV 89101
                             (702) 382-1170

For Desert Lakes
Apartments, LP and
TJP Credit, LLC:             Andersen Law Firm, Ltd.
                             By:  RYAN A. ANDERSEN
                             415 South 6th Street, Second Floor
                             Suit 203-B
                             Las Vegas, NV 89101
                             (702) 522-1992

For U.S. Bank National
Association, as Trustee
for the Registered
Holders of Wachovia
Bank Commercial
Mortgage Trust:              Snell & Wilmer LLP
                             By:  BLAKELEY GRIFFITH, ESQ.
                             3883 Howard Hughes Parkway, #1100
                             Las Vegas, NV 89169
                             (702) 784-5200
```

1    (Proceedings commence at 10:41 a.m.)

2            THE CLERK:  Court is back in session.

3            THE COURT:  Have a seat.  All right.  We are here for

4    the two matters on my 10:30 calendar today.  Both are in the

5    lead case identified as TJ Plaza, LLC, Chapter 11, Number

6    14-11894.  This is the date, place and time set for the Court's

7    oral ruling on two matters that are pending before me.  The

8    first is Docket Number 137, an objection to claims of TJP

9    Credit, LLC, and Desert Lakes Apartments, LP, pursuant to 11

10   U.S.C. Section 502(a) filed by U.S. Bank, the response thereto

11   and the reply.  The second -- and that is Docket Number 137 if

12   I didn't say it already.

13           The second matter before me for resolution is an

14   application -- or excuse me, a motion to disallow TJP Credit,

15   LLC and Desert Lakes Apartments, LP to vote on a plan of

16   reorganization.  That motion is filed also by U.S. Bank and is

17   also similarly contested.

18           The Court has already entertained argument from

19   counsel in connection with the objection and the response, the

20   related replies and so forth.  And argument in connection with

21   this matter was conducted on September 24th of 2014, at which

22   point in time the record was closed and the matter was taken

23   under submission.  The continuance to today's date is solely

24   for the purpose of the Court issuing its oral ruling with the

25   two matters I've identified that are pending before me.

1          There will be no argument.  There will be no
2   additional evidence.  There will be no dialogue or colloquy
3   between the Court and the parties.  Simply oral rulings like
4   this, I do them to expedite the resolution of important
5   matters, particularly in Chapter 11 cases where time is of the
6   essence, so that the parties can take appropriate action on
7   behalf of their clients, and this is a breakwater issue in
8   connection with the cases that are pending before me.
9          I would ask the parties that are here, first, so that
10  the record is complete, to go ahead and state your appearances
11  on the record.
12          MR. GRIFFITH:  Good morning, Your Honor.  Blakeley
13  Griffith on behalf of the secured lender, U.S. Bank.
14          THE COURT:  Good morning.
15          MR. ANDERSEN:  Good morning, Your Honor.  Ryan
16  Andersen on behalf of TJP Credit, LLC, and on behalf of Desert
17  Lakes Apartments, LP.
18          THE COURT:  Good morning.
19          MR. ZIRZOW:  Your Honor, good morning.  Matt Zirzow
20  with Larson & Zirzow, counsel to the debtors, TJ Plaza and
21  DSWC.
22          THE COURT:  Very well.  Now that we know who's here,
23  I will ask one other courtesy from the parties.  I'm going to
24  guess that I have a 50 percent chance of you disagreeing with
25  me on one side or the other of the ledger.  And I understand

1  that you're advocates for your client's position, and that

2  these issues are particularly important to the administration

3  of this case.  However, today's oral ruling is not an

4  opportunity to further argue after I state what my ruling will

5  be.

6          So, please, you may have a desire to say that the

7  Court made an error and the Court is wrong, or the Court should

8  do more than it does in connection with its oral ruling.  There

9  are ways to address those issues, but they are not to be done

10  from the podium in the courtroom today.  The only purpose of

11  the hearing for today is to let you know the outcome of the

12  pending matters.

13          The reason I ask is simple:  If I issued a written

14  ruling, I wouldn't send it to you for comment and input and

15  editing before I put it on the docket.  This is effectively the

16  same thing.  Hopefully it will be sufficient for purposes of

17  all matters related to case administration as I go forward.

18  We'll soon find out.

19          Let's get to the heart of the matter.  We will take

20  Item 1 on the calendar, the Court's oral ruling with respect to

21  the objection to claims of TJP Credit, LLC and Desert Lakes

22  Apartments, LP, Docket Number 137.  With respect to that

23  matter, the Court finds that the issues pending before it today

24  for resolution are joined through the following documents which

25  the Court has reviewed in preparation for this ruling.

1          First, U.S. Bank's objection to claims of TJP Credit,

2  LLC and Desert Lakes Apartments, LP, pursuant to 11 U.S.C.

3  Section 502(a), that's ECF Number 137.

4          Second, the response to U.S. Bank's objection filed

5  by TJP Credit, LLC and Desert Lakes Apartments, LP, ECF Number

6  209.

7          Third, the debtor's joinder and the response filed by

8  TJP Credit, LLC and Desert Lakes Apartments, LP, ECF Number

9  2013.

10          U.S. Bank's reply to the response filed by TJP

11  Credit, LLC and Desert Lakes Apartments, LP, ECF Number 219.

12          The declarations referenced in each of the foregoing

13  pleadings and the arguments presented by counsel at the

14  September 24th, 2014 hearing held by the Court on the issues

15  joined by the parties.

16          The Court does consider the matters before it fully

17  submitted and on the record before it makes the following

18  findings of fact and conclusions of law.

19          First, the Court is satisfied that it has

20  jurisdiction over the debtors' jointly administered case as

21  pursuant to 28 U.S.C. Section 1334, 157(a), and District Court

22  Local Rule 1001(b)(1).

23          Second, this contested claim objection constitutes a

24  core proceeding under 28 U.S.C. Section 157(b)(2)(A) and (B).

25          Third, venue is proper in this Court pursuant to 28

7

1  U.S.C. Section 1408(1) and 1409(a).

2        With respect to findings of fact, the Court relies,

3  of course, upon the entire record before it in this case, and

4  to the extent appropriate as it related to this ruling, the

5  Court takes judicial notice of its own docket pursuant to

6  Federal Rule of Evidence 201.  The statement of facts that the

7  Court will make on the record today highlights the key facts

8  pertinent to the resolution of the dispute joined by the

9  parties.

10        TJ Plaza and DSWC, the debtors in these cases, own a

11  shopping center as tenants in common.  "The Plaza" is what

12  we'll refer to that as.  Excuse me, the Plaza is wholly owned

13  by TJP, a Nevada Limited Partnership, TJP, LP.

14        TJ Plaza is a special-purpose entity whose sole

15  purpose is to hold title to the shopping center.  Until

16  recently, TJ Plaza did not have a bank account, and TJP, LP

17  caused payments to be made on behalf of the debtors from TJP,

18  LP's bank account, including all payments to vendors, all tax

19  payments, all payments made to TJP credit, and all payments

20  made to U.S. Bank.  Pursuant to a joint ownership and

21  management agreement, and by virtue of the relationship as

22  tenants in common, DSWC through the Weiner Trust, W-E-I-N-E-R,

23  and TJP Plaza share in all expenses of the center.

24        In July of 2003, debtors borrowed the principal sum

25  of $5,100,000 from U.S. Bank's predecessor in interest,

8

1  agreeing to an interest rate of 5.58 percent per annum, and

2  I'll refer to that as "the U.S. Bank loan."

3        The U.S. Bank loan required principal and interest

4  payments of $28,213.74 beginning on August 11, 2003, and

5  continuing until June 11, 2013, at which time the principal

6  balance and all accrued interest would become due in a single

7  lump sum payment.

8        The debtors executed the deed of trust, security

9  agreement and fixture filing, granting U.S. Bank's predecessor

10 in interest as security in, among other things, the shopping

11 center, all rents generated by the shopping center, and various

12 personal property owned by the debtors.

13        In late 2010, the center's anchor tenant, Trader

14 Joe's, demanded certain improvements in order for Trader Joe's

15 to renew its lease with the debtors.  Specifically, Trader

16 Joe's was asking that the front facade of the building be

17 remodeled to conform with the style of facade used by new

18 Trader Joe's locations across the West Coast.  Total cost of

19 the remodel was projected to cost about $650,000, and without

20 it, the debtor was aware that Trader Joe's was potentially

21 going to exit the shopping center.

22        As the debtor's equity holders were either unwilling

23 or unable as a group to fund the necessary remodel, the debtors

24 were required to obtain a loan in order to undertake the

25 remodel and retain Trader Joe's as a tenant.

1    To that end, Jeffery Susa, Mr. Susa, who has sworn

2    out a declaration and that the Court has reviewed in connection

3    with this oral ruling, as the principal of the property manager

4    of the center was able to make use of his connections as a

5    property developer and manager in the Las Vegas Valley.

6    Third parties with funds to lend have been in contact

7    with him and inquired whether he required funds for any

8    projects.  Eventually it was decided that a new entity should

9    be formed for the third-party lenders so that various parties

10   wishing to lend funds could act in concert through one lending

11   agreement.  Because of this, TJP Credit was formed in early

12   2011.  Mr. Susa is not and was not a member of TJP Credit, and

13   so that the record is very, very clear, TJP Credit is not

14   either of the debtors in this case.

15   TJP Credit made an unsecured loan of $650,000 to TJP,

16   LP, at an interest rate of 12 percent per annum.  I'll call

17   that "the TJP Credit loan."  The TJP Credit loan is attached as

18   Exhibit 2 to the objection to the proof of claim here.  TJP, LP

19   executed a promissory note by which it agreed to make monthly

20   interest-only payments of $6,500 beginning on March 1st of

21   2011, with the unpaid principal and any accrued interest

22   payable in a lump sum on April 1st of 2014.

23   Until the debtors filed for the bankruptcy, the

24   required payments on the TJP Credit loan were timely paid.

25   However, neither interest payments nor the April 1, 2014 lump

1  sum have been paid since the debtors filed for bankruptcy.  As

2  a result, the TJP Credit loan is in default and the full amount

3  of the unpaid principal and unpaid interest is now due and

4  payable.

5          Due to cost overruns, the initial estimated cost of

6  repairing the facade, $650,000, proved to be insufficient to

7  complete the required remodel and an additional loan became

8  necessary.

9          On January 9th of 2012, Desert Lakes made an

10  unsecured loan in the amount of $65,000 to TJP, LP, again not

11  to either of the debtors, at an interest rate of 12 percent per

12  annum.  I'll call that "the Desert Lakes loan," and

13  collectively with the TJP Credit loan, "the loans."  I'll see

14  how well I do as I go through.

15          The purpose of the Desert Lakes loan was to provide

16  the additional funding necessary to complete the remodel of the

17  facade so that it could be completed and that the concerns of

18  Trader Joe's would be fully resolved.

19          TJP, LP -- not either of the debtors -- executed a

20  promissory note in which it agreed to make monthly interest

21  payments only of $650 beginning on January 12th of 2012 and

22  continuing thereafter until such time as the unpaid principal

23  balance was paid in full.

24          The Desert Lakes loan is attached as Exhibit 1 to the

25  objection, and to date the Desert Lakes has not received any

1  payment on the Desert Lakes loan.  As a result, the Desert

2  Lakes loan is in default and the full amount of the unpaid

3  principal and accrued interest is now due and payable.

4         The Court also takes judicial notice of its own

5  docket, as I indicated previously and specifically with respect

6  to this fact.  The Court finds on review of its claims docket

7  that no proof of claim has been filed in these jointly

8  administered cases by either TJP Credit, LLP or Desert Lakes

9  Apartments, LP.

10         That said, scheduled, undisputed, non-liquidated

11  claim is, quote, "deemed allowed" under Section 502(a) unless a

12  party in interest objects.  See 11 U.S.C. Section 502(a),

13  Federal Rule of Bankruptcy Procedure 3001(f).  Also they have

14  cited In Re Dynamic Brokers, Inc., 293 B.R. 489, 495 (9th Cir.

15  2003).  Upon objection, the claim provides only some evidence

16  as to its validity and amount.  Lundell v. Anchor Construction

17  Specialists, Inc., 223 F.3d 1035, 1039 (9th Cir. 2000), citing

18  In Re Holm, 931 F.2d 620 at 623, (9th Cir. 1991).

19         A filed proof of claim is not a prerequisite to

20  argument for disallowance under Section 502(a).  The parties

21  have cited the In Re Microage case, 291 B.R. 508:

22              "There is no introductory language in Section 502

23              that limits the application of the subsections that

24              follow to claims for which proofs of claim must be

25              filed."

1          Also, the Court relies up on Federal Rule of
2    Bankruptcy Procedure 3003(b)(1) which states that schedules and
3    statements filed in a Chapter 11 case constitute prima facie
4    evidence of the validity and amount of claims of creditors
5    unless they are scheduled as disputed, contingent or
6    unliquidated.

7          A creditor is an entity that has a claim against the
8    debtor that arose at the time of or before the order for relief
9    concerning the debtor, 11 U.S.C. Section 101(10)(a), and a,
10   quote, "claim" is a right to payment, whether or not such right
11   is reduced to judgment, 11 U.S.C. Section 101(5)(a).

12         The Supreme Court has explained, and this Court
13   certainly accepts, that the definition of the term "claim" is
14   to be construed broadly, and that a right to payment means
15   nothing more or less than an enforceable obligation.
16   Pennsylvania Department of Public Welfare v. Davenport, 495
17   U.S. 552, 559 (1990).

18         However, absent an overriding federal interest, the
19   existence of a claim in bankruptcy is generally determined by
20   reference to state law, In Re Cross, 218 B.R. 76, 78, a
21   decision from the Bankruptcy Appellate Panel for the Ninth
22   Circuit, 1998, analyzing whether plaintiff had standing to
23   bring a 523(a)(2)(A) action against the Chapter 7 debtor.

24         State law does inform the Court's decision in this
25   case because the underlying transactions at issue here are

1  purely commercial in nature, and the Court finds that there is

2  no apparent federal interest, overriding or otherwise.  So the

3  inquiry for the Court turns on whether TJP Credit and Desert

4  Lakes have an enforceable claim under Nevada law.

5          The other issue that the Court has to resolve is the

6  fact that the objection here was not bought by the natural

7  enemy of the claims, which would be the debtor, but was instead

8  bought by a secured creditor participating in the

9  reorganization process.  That's unusual, not unheard of.  The

10 question is whether or not the secured creditor has standing to

11 object to the claims of Desert Lakes and TJP Credit.

12         The Court finds as a matter of law that the U.S. Bank

13 is, in fact, a secured creditor in this case and has standing

14 to object to the claims of Desert Lakes and TJP Credit pursuant

15 to Section 502(a) and Federal Rule of Bankruptcy Procedure

16 3007.

17         Finding that the objecting party does have standing

18 to raise the objections that it has, the Court then turns to

19 state court -- or state law to determine whether or not Desert

20 Lakes and TJP Credit have claims against the debtors in the

21 context of the issues joined by the parties.

22         The Court finds that Desert Lakes and TJP Credit do

23 not have claims against either debtor.  The United States

24 Supreme Court has plainly stated that it goes without saying

25 that a contract cannot bind a non-party.  U.S. Bank has cited

1  EEOC v. Waffle House, Inc., 534 U.S. 279, 294 for that

2  proposition, a decision from the United States Supreme Court in

3  2002.

4         Nevada courts are in accord with the decision of the

5  United States Supreme Court in that regard, and the Court finds

6  the authority cited by U.S. Bank persuasive, and in particular

7  Transportation Services Authority of Nevada v. Garijo, 281 P.3d

8  1225 (Nev. 2009), in which the Court noted specifically, quote,

9  "A non-party cannot be held to the obligations of the

10  contract."

11         It's unusual to have this particular issue come

12  before the Court, and that's largely, this Court believes

13  anyway, that it's because the general principle of contract law

14  just cited is, as noted by the Nevada Supreme Court, quote:

15             "So fundamental that it rarely receives mention in

16             case law or commentary, namely that only the parties

17             to contracts are liable for their breach."

18         Lou v. JHK Investment Group, 2011 WL 9527520 (Nev.

19  2011) (phonetic), citing or quoting FCM Group, Inc. v. Miller,

20  17 A.3d 40, 54, a decision from the Supreme Court in

21  Connecticut in 2011.  The obligation of contracts is limited to

22  the parties making them.  In this case, the debtors were not

23  parties to the loan contracts at issue, and ordinarily only

24  those parties who -- to contracts are liable for their breach.

25  Parties to a contract cannot thereby impose any liability on

1    one who, under its terms, is a stranger to the contract, and

2    there is no evidence in the record before the Court here that

3    the debtors in any way participated in the loan agreements that

4    are the contracts that I'm focused on.

5         And, in any event, in order to bind third parties or

6    third persons contractually -- and this is key -- an expression

7    of assent by such person is necessary.  Lou v. JHK Investment

8    Group, 2011 WL 9527520, quoting Gambles -- that's a decision

9    from the Supreme Court of Nevada in 2011 quoting Gambles v.

10   Perdue, 572 P.2d 1241, 1243, a decision from Montana in 1977.

11        The Lou Court noted, quote, "It is elementary that a

12   contract binds no one but the contracting parties."  The Court

13   agrees.  There is no indication of an assent on this record,

14   and there is no contract in written form that binds the debtors

15   to the obligations of Desert Lakes or TJP Credit.

16        Significantly, in their statements and schedules, the

17   debtors list 65,000 owing to Desert Lakes and $650,000 owing to

18   TJP Credit.  The Court finds those references in the voluntary

19   petitions filed in these matters at Docket Number 1 in

20   Bankruptcy Cases Number 14-11894 and 11895 that the debtors are

21   not the obligors here.  These loans were not made to the

22   debtors but rather to TJP, LP.

23        The note straight that is proof of the loan from

24   Desert Lakes is between TJP, LP and Desert Lakes.  A true and

25   correct copy of that has been attached to the objection as

1  Exhibit 1 and the Court has reviewed it.  Likewise, the

2  unsecured note from TJP Credit is a loan to TJP, LP.  A true

3  and correct copy of the TJP Credit note is also attached to the

4  objection as Exhibit 2 and the Court has reviewed it.

5        On the record before it the Court finds that neither

6  Desert Lakes nor TJP Credit has a contract with the debtors.

7  Instead, pursuant to the Desert Lakes note, the borrower for

8  the unsecured loan was TJP, LP, Exhibit 1 to the objection to

9  the claim.  The borrower for the TJP credit note was also TJP,

10  LP, Exhibit 2 to the objection.

11        There is no reason that the Court can identify on

12  this record why the debtors would be obligated with respect to

13  either of those loans, especially in the absence of an

14  expression of assent to being obligated on those loans.  The

15  Court finds significantly, too, the absence of a guarantee

16  executed by the debtor in order to provide the assent

17  references by the Lou court or any other documents may well

18  have been intentional.

19        That having been said, the only facts the Court

20  reviews and the only facts upon which the Court relies in

21  making its decisions here today is the absence of any

22  obligation or any contractual obligation directly between the

23  debtors, Desert Lakes, and TJP Credit.

24        A creditor in a bankruptcy case, as the parties well

25  know and the Court finds, is an entity that has a claim against

1  the debtor that arose at the time of or before the order for

2  relief concerning the debtor, 11 U.S.C. 101(10)(a).  The Court

3  is mindful as the objecting part -- or, excuse me, the

4  responding parties have pointed out that a claim is a right to

5  payment, whether or not such right is reduced to judgment, 11

6  U.S.C. 101(5)(a).

7        The fact of the matter here is, as I've indicated

8  previously, while a claim is to be construed broadly, the term

9  "right to payment" and the definition of that term means

10 nothing more or less than an enforceable obligation.  The Court

11 finds no enforceable obligation as against the debtors on the

12 record before it.

13       Given the absence of privity between the debtors,

14 Desert Lakes, and TJP Credit, the only hope that could defeat

15 the objection that has been interposed by U.S. Bank is that

16 there would be other state law claims that could be advanced by

17 Desert Lakes and TJP Credit against the debtor that would

18 somehow bring them within the broad scope of the definition of

19 claim.

20       The theories advanced by Desert Lakes and TJP Credit,

21 in order to bring themselves within claim, a term claim, given

22 the fact that there is no contractual privity between them and

23 the debtors here are two-fold -- quasi-contract and unjust

24 enrichment.  The Court has considered those theories in turn

25 and finds them to be unpersuasive.

1          TJP Credit and Desert Lakes attempt to bring

2   themselves within the definition of a term claim by asserting

3   those equitable theories.  However, where such claims are

4   brought against the debtor for contracts made by an affiliate

5   company, the claimant must pierce the corporate veil.  U.S.

6   Bank has cited In Re Baroi v. Platinum Condominium Development,

7   2012 WL 2847912, a decision from the District of Nevada on July

8   11th of 2012.  The Court finds that case informative and

9   persuasive.

10         In Baroi the Court held that a plaintiff may not

11  pursue an unjust enrichment claim against a parent corporation

12  where the plaintiff has an express written contract with a

13  subsidiary absent a showing of alter ego or some other theory

14  of liability.  The Court agrees with U.S. Bank that the same

15  rationale applies with respect to unjust enrichment claims

16  brought against, in this case, a subsidiary -- the debtors --

17  for contracts made by its parent company because reverse

18  piercing of the corporate veil is appropriate in those limited

19  circumstances where the particular facts and equities show the

20  existence of an alter ego relationship.  U.S. Bank points out

21  the case of LFC Marketing Group, Inc. v. Loomis, 116 Nev. 896

22  at 904 (2000).

23         The alter ego doctrine as it applies in Nevada sets

24  very high standards.  The corporation must be influenced and

25  governed by the person asserted to be its alter ego.  There

1   must be such unity of interest and ownership that one is
2   inseparable from the others, and the facts must be such that
3   adherence to the fiction of separate entity would be under the
4   circumstances sanctioning a fraud or promoting injustice,
5   Lipshie v. Tracey Investment Corp., 93 Nev. 370 at 823 (1977),
6   quoting McCleary Cattle v. Sewell, 73 Nev. 279 at 282 (1957).

7           U.S. Bank points out, and the Court agrees, that TJP
8   Credit and Desert Lakes have failed to address those issues,
9   nor have they proven the elements of the alter ego doctrine on
10  the record pending before the Court.  The Court is mindful that
11  TJP Credit and Desert Lakes have cited LeasePartners
12  Corporation v. The Robert L. Brooks Trust, 942 P.2d 182, but
13  tends to agree generally with U.S. Bank that that case is right
14  on the mark.

15          LeasePartners doesn't consider instances where the
16  claim brought against the subsidiary is solely based on an
17  agreement between plaintiff and the parent company.  Although
18  it's alleged that the debtors benefitted from the loans made to
19  TJP, LP, and the Court doesn't really dispute that fact, the
20  fact the loan is insufficient to pierce the corporate veil and
21  show unjust enrichment under the facts that are before me now.
22  In fact, TJP, LP allowed the debtors to use the loan proceeds
23  to some extent, in all likelihood, because it would benefit
24  from the renovations in allowing the debtors to retain the most
25  important tenant at issue here which is Trader Joe's.

1            TJP Credit and Desert Lakes also acknowledged that

2    essential to the viability of an unjust enrichment theory is

3    the absence of a written contract.  That's not the case here.

4    "To permit recovery by quasi-contract where a written contract

5    exists would constitute a subversion of contractual

6    principles."  <u>Lipshie</u>, 93 Nev. 379.

7            That is what would result if the Court accepted the

8    unjust enrichment claims advanced by Desert Lakes and TJP

9    Credit.  The Court has been invited to allow and permit

10   recovery by quasi-contract where a written contract does exist.

11   The Court declines that invitation and does so specifically

12   because it finds that invitation is an invitation to subvert

13   contractual principles under applicable state law.  In the end,

14   the claims of Desert Lakes and TJP Credit with respect to

15   unjust enrichment fail.

16           The second equitable theory that Desert Lakes and TJP

17   Credit advance in order to bring themselves within the broad

18   definition of the term claim is a money had and received

19   argument.  The Court has reviewed the applicable case law cited

20   by the parties and finds the authority cited by U.S. Bank to be

21   credible and controlling.  Desert Lakes and TJP Company's money

22   hadn't received argument is an ancient cause of action.  The

23   Court finds that it is duplicative of the modern theory of

24   adjustment that I just rejected.  See <u>Risinger v. SOC LLC</u>, 936

25   F.Supp.2d 1235, 1245, a decision from the District of Nevada in

21

1    2013.  Claims are duplicative when the causes of action and

2    relief sought as well as the parties or privies to the action

3    are the same.  That is the situation before the Court here.

4    See <u>Adams v. California Department of Health Services</u>, 487 F.3d

5    684, 689 (9th Cir. 2007), overruled on other grounds by <u>Taylor</u>

6    <u>v. Sturgell</u>, 553 U.S. 880 at 9004 (2008).

7            This Court finds that money had and received under

8    applicable Nevada law is a common law variation of an unjust

9    enrichment claim.  <u>Risinger</u>, 96 F.Supp.2d at 1245.

10           As I've already found, TJP Credit and Desert Lakes do

11   not have a valid unjust enrichment claim under applicable state

12   law.  Their arguments for money had and received are

13   duplicative as simply a variant of the unjust enrichment theory

14   already rejected by the Court.  As such, the assertion of the

15   money had and received argument is simply unavailing and the

16   Court finds it to be unpersuasive.

17           Which leaves the only question:  On the factual

18   record before me, and given the cases and the authorities that

19   I've cited, Desert Lakes and TJP, LP have claims against the

20   debtor in connection with this case.  In the absence of an

21   objection, given the facts here, that might be true.  But I do

22   have an objection raised by U.S. Bank.  They have standing to

23   raise it.

24           Their arguments are persuasive given the fact that

25   neither of the debtors, TJP Plaza, LLC or DSWC, Inc., are

1  parties to the loan agreements that underpin the claims

2  asserted by TJP Credit and Desert Lakes, given the fact that

3  the loan agreements underpinning the claims asserted by TJP

4  Credit and Desert Lakes were instead executed by TJP, LP, and

5  significantly because TJP -- neither TJP Credit nor Desert

6  Lakes have filed a proof of claim in this case.

7  The Court can find only that there is no viable claim

8  held by either Desert Lakes or TJP Credit with respect to the

9  debtors in this matter, and that will be the Court's ruling

10 with respect to the objection.

11 The objection to the claim filed by U.S. Bank

12 National Association will be sustained, and the relief

13 requested in that objection will be granted for the reasons

14 stated by the Court and pursuant to the authorities identified

15 by the Court on the record here today.

16 Counsel for U.S. Bank, that makes you the prevailing

17 party.  The record that I've made in open court here today

18 should serve as the record for purposes of review by the

19 parties and any other court that might ultimately have to take

20 this matter up.

21 Rather than trying to recite everything that I've

22 just read into the record today, the order should be short,

23 sweet, and it should say that the objection to the claims of

24 TJP Credit, LLC and Desert Lakes Apartment, LP are sustained

25 and the relief requested in the objections is granted, and that

1  the findings of fact and conclusions of law stated by the Court

2  on the record today will -- are incorporated into the order

3  pursuant to Federal Rule of Civil Procedure 52 and Federal Rule

4  of Bankruptcy Procedure 7052, simple as that.

5          Because this is a highly disputed case and because

6  this is a significant and breakwater decision for the debtors,

7  in connection with this matter I would like certainly for them

8  to be sure to have the opportunity to review that order and

9  make sure that you comply with the local rules in that regard.

10          The remaining matter on the docket at 10:30 in

11 connection with these cases is an oral ruling with respect to

12 the application -- excuse me, the motion to disallow TJP

13 Credit, LLC and Desert Lakes Apartments, LP to vote on a plan

14 of reorganization.  That's Docket Number 165, and it's also

15 subject to opposition.

16          Because the Court has now sustained the objection to

17 the claims of TJP Credit, LLC and Desert Lakes Apartments, LP,

18 they do not have the ability to vote and the motion to disallow

19 their votes in connection with this reorganization plan is no

20 longer a contested matter that the Court needs to resolve.  In

21 other words, it's moot, and so the motion to disallow TJP

22 Credit, LLC and Desert Lakes Apartments, LP to vote on a plan

23 of reorganization, Docket Number 165, will be denied without

24 prejudice as moot, and that will be the ruling with respect to

25 Item Number 2 on my 10:30 calendar.

1       Do you understand the order with respect to the

2   second item, as well?

3           MS. GRIFFITH:  Yes, Your Honor.

4           THE COURT:  All right.  These are hard decisions.

5   The matter is well-briefed and argued by the parties.  The

6   Court's ruling is what I consider to be the right one based on

7   the record before me.  I will let you take it from there,

8   counsel.

9           Ms. Shim, do I have anything further on my 10:30

10  calendar?

11          THE CLERK:  No, Your Honor.

12          THE COURT:  All right.  Seeing nothing, we're

13  adjourned.

14          THE CLERK:  Thank you.  All rise.

15      (Concluded at 11:17 a.m.)

16                      * * * * *

17

18

19

20

21

22

23

24

25

25

**C E R T I F I C A T I O N**

I, ILENE WATSON, court approved transcriber, certify
that the foregoing is a correct transcript from the official
electronic sound recording of the proceedings in the above-
entitled matter, and to the best of my ability.


ILENE WATSON, AAERT NO. 447          DATE:  October 6, 2014

ACCESS TRANSCRIPTS, LLC